# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:11-cv-00116-W

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) WATERFRONT GROUP NC, LLC, et. al., ) ) Defendants. ) ) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2), which has been fully briefed by the parties. (Doc. No. 3, 4, 15, 16, 23). On October 4, 2011, the Court received oral argument on the pending motion. For the reasons stated in open court, as well as those that follow, Plaintiff's Motion for a Preliminary Injunction is GRANTED.

### FINDINGS OF FACT

Defendant Waterfront Group NC, LLC, ("Waterfront Group NC") is a business engaged in subdivision development, including the development of an area called Riversound in Chowan County, North Carolina. As required by the Chowan County Code, Defendants requested Plaintiff to provide subdivision bonds on behalf of Waterfront Group NC for certain infrastructure improvements to be made during Phase I of the Riversound development. In order to induce Plaintiff to provide bonding services, the named Defendants executed a General Indemnity Agreement ("Indemnity Agreement") on May 31, 2007.

Some time in mid-2009, Waterfront Group NC lost funding and work ceased on the Riversound development. In December 2009, Plaintiff deposited $1,200,000 into a reserve. This amount was based on Waterfront Group NC's estimates to complete the Phase I bonded work, as

well as an independent engineering consulting firm's estimate for completion. Plaintiff contends these reserve funds appear as a "loss" on its balance sheet for accounting purposes.

On December 11, 2009, Plaintiff demanded payment from Defendants in the amount of $1,209,954 for the posted reserve and additional expenses Plaintiff contends it incurred in connection with the bonds. In February 2010, Waterfront Group NC posted $150,000 in collateral security in the form of a letter of credit and cash. Waterfront Group NC also advised Plaintiff that it had reached an agreement with the bank to re-obtain financing to continue work to complete Phase I. Development continued, but around November 2010, the bank ceased funding and work on Riversound ceased again.

On January 25, 2011, Plaintiff sent a second demand letter requesting collateral in the amount of $1,032,802, an amount adjusted downward to credit the $150,000 collateral security previously posted by Waterfront Group NC and upward for additional expenses Plaintiff incurred. On March 8, 2011, after Defendants failed to tender additional collateral security, Plaintiff filed the instant action against Defendants seeking to enforce the collateral security provision contained within the Indemnity Agreement.

> The relevant provision under the Indemnity Agreement provides:
>
> The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to increase its reserve to cover any possible additional liability or loss, the Contractor and Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase.

Plaintiff alleges it currently faces potential claims and expenses in excess of the $1,032,802.00 it previously demanded from Defendants. It is unclear from the documents before the Court when the original permit for completion of Phase I ended,[1] however, the parties agree it was extended to allow Waterfront Group NC until December 31, 2011, to complete the improvements. The bonded improvements have not been completed, and Plaintiff asserts that Waterfront Group NC has provided no viable plan for obtaining the necessary funding to complete the bonded improvements by the end of this year. To date, no demand or claim on the bonds has been made, and Defendants contend that Chowan County has not expressed any intent to make demand on the bonds.

### CONCLUSIONS OF LAW

To obtain a preliminary injunction, a plaintiff must clearly demonstrate that (1) it will likely succeed on the merits, (2) it is likely to be irreparably harmed absent preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342, 346 (4th Cir.2009), vacated on other grounds, 558 U.S. ——, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010), opinion reissued in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). The Court examines the factors in turn.

*Likelihood of Success on the Merits*

---

[1] The Subdivision Bonds at issue refer to the "improvements described in the plans approved by the Obligee." (Docs. Nos. 1-2; 1-3; 1-4; 1-5; 1-6; 1-7). However, these plans have not yet been made part of the record in this case. The affidavit of Frank Tanzola states that "The original completion date for Phase I has passed and was extended." (Doc. No. 20, p. 2, ¶ 14). Additionally, at oral argument, Plaintiff's counsel referenced the extension of the original completion date for Phase I, and Defendants did not contest such. The Court has reviewed the Complaint and exhibits thereto, the affidavits and corresponding exhibits submitted by the parties to date, and the briefs in support of and opposition to the instant motion and is unable to identify to the specific date for the original completion date. Nevertheless, the Court finds that the exact date is irrelevant in light of the parties' agreement that original completion date as permitted was extended.

Plaintiff alleges a breach of contract claim. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C.App. 19, 530 S.E.2d 838, 843 (N.C.Ct.App.2000) (citation omitted).

To obtain the remedy of specific performance for the breach, the plaintiff "must show the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform." Ball v. Maynard, 184 N.C.App. 99, 645 S.E.2d 890, 896 (N.C.App.) (citation and quotation omitted), disc. rev. denied, 656 S.E.2d 591 (N.C. 2007); see also Action Dev. Corp. v. Woodall, 205 S.E.2d 592, 595 (N.C.App. 1974) ("specific performance does not lie until there has been a breach of contract"). When construing contractual terms, the contract's plain language controls. See State v. Phillip Morris USA, Inc., 685 S.E.2d 85, 91 (N.C. 2009)("[A]ny undefined, nontechnical word is 'given a meaning consistent with the sense in which [it is] used in ordinary speech, unless the context clearly requires otherwise.'") (quoting Wachovia Bank & Tr. v. Westchester Fire Ins. Co., 172 S.E.2d. 518, 522 (N.C. 1970)).

Here, the parties do not dispute the existence of a contract. In pertinent part, the Indemnity Agreement provides, "The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, **as soon as liability exists or is asserted** against the Surety, whether or not the Surety shall have made any payment therefor." (Emphasis added). In light of contract's use of the disjunctive conjunction "or," the contract plainly states that Defendants must deposit collateral security, on demand, with Plaintiff in one of two instances: 1) where liability exists; or 2) where liability is asserted. Having satisfactorily established the existence of a contract, the dispute here hinges on whether Plaintiff is likely to show that this provision in Indemnity Agreement has been breached.

Although courts have enforced collateral security provisions based on a breach of the indemnity contract similar to the one at bar, Defendants and Plaintiff agree that most cases deal with situations where a demand or claim on the bond has been made. See, e.g., Safeco Ins. Co. of America v. Schwab, 739 F.2d 431 (9th Cir. 1984); American Ins. Co. v. Egerton, 59 F.3d 165 (4th Cir. 1995)(unpublished); First Nat'l Ins. Co. v. Sappah Brothers, Inc., 2011 WL 650553, No. 5:10-cv-494 (E.D.N.C. 2011). Here, as noted above, the parties agree that to date, no demand or claim has been made, thus hindering Plaintiff from proceeding *at this time* under the second instance for collateral security as contemplated in the Indemnity Agreement. Defendants argue that where no demand has been made, then Plaintiff cannot demonstrate a breach of the contract because an assertion of a claim on the bonds is required. To the contrary, to accept Defendants' argument would render the use of the word "or" in the collateral security provision meaningless. As explained above, liability may *either* "exist" *or* be "asserted." Because liability has not been asserted by the obligee to the bonds, Plaintiff may still show likelihood of success on the merits by establishing that liability on the bonds "exists."

Turning to the issue of whether liability exists, Plaintiff has sufficiently shown that although Chowan County has not made demand on the bonds, it could do so at any time. The parties agree the original completion date for Phase I has expired, but that it was extended for Waterfront Group NC's benefit. Such extension does not, however, apply to Plaintiff. See County of Brunswick v. Lexon Ins. Co., 425 Fed. Appx. 190 (4th Cir. 2011) (unpublished) ("However, the Permit Extension Act specifically does not apply to bond obligations.")(citing 2010 N.C. Sess. Laws 177 Section 5(8) ("This act shall not be construed or implemented to ... [m]odify any person's obligations or impair the rights of any party under contract, including bond or other similar undertaking.")). Therefore, the expiration of the original completion date as provided for in the permit issued by the county,

coupled with the fact the permitted infrastructure improvements were incomplete, triggered Plaintiff's obligation to pay on the bonds. Such obligation continues for Plaintiff notwithstanding Chowan County's forbearance in making a claim. Additionally, Waterfront Group NC's development of Riversound has stopped. Defendants' own exhibits demonstrate that "work of the contractors ceased during 2011." (Doc. No. 34, p.2 ¶ 9, Second Affidavit of William N. Adkins; see also Doc. No. 16-1, p. 3, Exhibit to Affidavit of William N. Adkins (article from March 23, 2011, states that subdivision "appears to be on shaky ground" and that "work at the site has stopped and no one knows why."). While Waterfront Group NC contends it intends to complete the development, Plaintiff has satisfactorily demonstrated for purposes of this injunction that liability exists, and Plaintiff has set aside and maintained a reserve of $1,200,000 to pay its liabilities on the bonds. The Court concludes as a matter of law that Plaintiff has demonstrated likelihood of success on the merits for its claim of breach of the collateral security provision in the Indemnity Agreement contract.

*Irreparable Harm*

Plaintiff is likely to suffer irreparable harm absent an injunction as evidenced by the potential loss of collateral to satisfy the collateral security obligation. The Court is unpersuaded by Defendants argument that no irreparable harm exists because any loss by Plaintiff can be compensated in monetary damages. Courts routinely recognize that "a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages." See First Nat. Ins. Co. Of America v. Sappah Bros, Inc., 771 F.Supp.2d 569, 574-75 (E.D.N.C. 2011) (citing Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp., 534 F.Supp.2d 1290, 1321 (S.D.Fl. 2008) (citing United States Fid. & Guar. Co. v. Feibus, 15 F.Supp.2d 579 (M.D.Pa.1998); United Fire & Cas. Co. v. Coggeshall Contr. Co., No. 91–3159, 1991 WL 169147 (C.D.Ill.1991) ("The Court further finds that

the rendition of a judgment for money damages at the end of this case without according Plaintiff Surety the relief of specific performance pursuant to the cited provision of the indemnity agreement is not an adequate remedy and would irreparably harm the Plaintiff Surety by depriving it of pre-judgment relief to which it is contractually entitled." (citations omitted))); see also Inter'l Fidelity Ins. Co. v. Anchor Environmental, Inc., 2008 WL 1931004 *7 (E.D.Pa. 2008)(finding irreparable harm and reasoning that"If Plaintiff is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect Plaintiff from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted.").

Moreover, the evidence here indicates that Defendants have had difficulty obtaining financing for completion of Phase I in the Riversound development and have also experienced problems maintaining sufficient funds to pay contractors. (Doc. No. 3, Affidavit of Frank Tanzola and exhibits thereto, including Docs. Nos. 3-2, 3-3). Thus, even if Plaintiff's loss could be compensated by money damages, Plaintiff has raised sufficient doubt as to whether Defendants would be able to satisfy such judgment. The inability to collect on a judgment would destroy Plaintiff's right to enforce the contract. Both the Seventh Circuit and the Third Circuit have recognized that the inability to collect on a monetary judgment can support a finding of irreparable harm. See E.A. Hawse Health Center v. Bureau of Medical Services, 2011 WL 4528492 (S.D.W.Va. 2011)(unpublished)("'Damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'") (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir.1984); citing Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 206 (3d Cir.1990) (holding that "the unsatisfiability of a money judgment can constitute irreparable injury")).

Here, Plaintiff holds a bargained-for right to collateral security and, without enforcement of such right, assumes the risk of becoming a general unsecured creditor and of being unable to collect a subsequent judgment in its favor. Therefore, the Court finds that Plaintiff will be irreparably harmed absent a preliminary injunction.

*Balance of the Equities*

Without an injunction, Plaintiff would be forced to bear the entire loss of the bond claims and expend its own assets without being collateralized, notwithstanding the parties' agreement otherwise in the Indemnity Agreement. Granting the injunction would require Defendants to perform as they contractually-obligated themselves to do. Should Defendants prevail in the end – or any subsequent payment on the bonds be less– Plaintiff would be forced to return the balance of the collateral to Defendants. Finally, any detrimental economic impact the injunction has on Defendants is insufficient to tip the scale in its favor.

*Public Interest*

There is a public interest in enforcing the terms of a valid contract. UBS Painwebber, Inc. v. Aiken, 197 F.Supp.2d 436, 448 (W.D.N.C. 2002). Moreover, the public holds an interest in enforcing bonds that have been provided pursuant to county ordinances, particularly where projects will benefit the public. As succinctly-stated by a fellow court in the Eastern District of North Carolina, "enforcing the collateral security provision of an indemnity agreement in the construction setting serves an important public interest: to encourage sureties to continue to provide bonds for public construction contracts." First Nat. Ins. Co. of America, 771 F.Supp.2d at 575. Therefore, the Court concludes that issuance of an injunction supports the award of a preliminary injunction here.

## SUMMARY

For the reasons stated in open court and those explained here, the Court finds that Plaintiff has made a clear showing of entitlement to preliminary enforcement of the collateral security provision of the Indemnity Agreement with Defendants.

IT IS THEREFORE ORDERED that within ten (10) days of the issuance of this order, Defendants shall deposit with Plaintiff the sum of $1,032,802 in certified funds or, alternatively, to provide property to (or liens and security interests in property for the benefit of) Plaintiff, such total value to equal or exceed $1,032,802.00. IT IS FURTHER ORDERED that Plaintiff shall post a bond with the Clerk of Court in the amount of $10,000.00.

IT IS SO ORDERED.

Signed: October 5, 2011

Graham C. Mullen
United States District Judge